case for argument. Case number 19-2832 from the District of South Dakota, United States v. Jamie Shoulders. Alright, Mr. Erlinson, the court appreciates your willingness to accept the appointment under the Criminal Justice Act, and we'll hear from you first. Thank you, your honors, and may it please the court and counsel. On May 27, 2017, Jamie Shoulders was catching a ride with Scott Benson and Clarence Yellowhawk when Benson and Yellowhawk stopped to complete a drug deal with Chris Jenise and his cousin. Mr. Benson gets out of the backseat of his vehicle and into the backseat of the minivan to work out a drug deal. A short time later, Clarence Yellowhawk gives Shoulders a gun and directs him to go check on Benson during this drug deal. Motive is important in this case because it was one of the factors that the judge found was really missing. And that's why I'm reciting a little bit of these facts, your honors, because when Mr. Shoulders goes to check on Mr. Benson during this drug transaction, he sees a gun on the center console of that minivan. And according to Mr. Shoulders, he freaks out, gets scared, his stomach tightens up, and then he fires two shots at Mr. Jenise's legs. The three men fled and unfortunately Mr. Jenise died. Neither Benson nor the victim's cousin were injured. Shoulders was apprehended four days later and gave a statement. And his statement provided the only evidence that was available to the court to determine what his motive was. Mr. Shoulders was not part of a drug deal. He had no prior criminal history concerning gun violence, no prior criminal history concerning drugs. He had no reason to be there. He was merely a passenger. The parties had the money for the drugs. So the motive was clear. He was afraid, he was scared, and he freaked out, unfortunately, causing the death of Mr. Jenise. After he fired the first two shots, he dropped the gun and then Clarence Yellowhawk jumped up and finished Mr. Jenise off, firing multiple rounds into his body. Shoulders pled guilty, acknowledged his responsibility, and was sentenced to 25 years in prison. I respectfully submit that the sentence is plagued by three significant procedural errors and is substantively unreasonable. First, the court improperly departed under the sentencing guidelines using two impermissible enhancements. Second, the court selected a sentence based upon clearly erroneous facts. And third, the court failed to properly explain its sentence. I'm going to start with the significant procedural errors that I believe exist, Your Honors. First, when talking about departures, as the court is well aware, courts cannot depart unless it basically finds that there is an aggravating or mitigating circumstance taking the case out of the heartland or typical cases. In this case, second-degree murder. I respectfully submit that using a gun to kill somebody is clearly not outside the heartland of cases in second-degree murder cases. While the death is undeniably tragic, this case is not undeniably or it's not cruel, heinous. Mr. Janisse, from all appearances, died fairly quickly. There was no suffering. He was shot, and there was no torture, nothing taking it outside of the heartland. What about the fact that there were other people in the car? Now, I understand there's a dispute about, well, not even a dispute, but that the wife versus cousin issue, and he was in the passenger seat, but there were, I believe, two other people in the car. What relevance does that have in your view? In my view, it's certainly relevant to a minor extent. More to the point, I do not believe that other than the mere fact that a gun was fired by Mr. Janisse, there was no appreciable increase in risk. There was no evidence on trajectory, certainly no evidence to contradict the statement that my client gave, Mr. Shoulders, that he fired downward into the legs, and the autopsy showed that Mr. Janisse was struck in the legs and in the upper extremities. Neither of the two other people in the vehicle were injured by anything Mr. Shoulders did or anything that Mr. Yellowhawk did. The second issue that we look at, whether or not to enforce an enhancement, is whether or not that enhancement contains an element of the underlying offense. The courts, of course, may not use an enhancement to depart if the base offense already contemplates the departure element or factor. The base offense level for second-degree murder contemplates not only the obvious, that someone has died, but also that a weapon or dangerous instrumentality was used in causing it. First, on the death policy, the district court erred in departing that section because the dealt with an enhancement under the death guideline that addresses that in the context of a second-degree murder case, and that was U.S. v. Roston, which concluded that that offense level already contained a risk for that personal injury. The two cases cited by the government in support of their proposition for the use of that enhancement are United States v. Montgomery, and I believe they're very easily distinguishable. First of all, in United States v. Terry, that dealt with an uncharged death. The driver in a racing incident on the road died along with two innocent motorists. The defendant pled guilty to the death of the two innocent motorists, but there was an uncharged death that of the other driver. We do not have that case here. The second case, United States v. Montgomery, that concerned a death of somebody who was given a gun or used a gun from a felon who was not supposed to have that. Clearly inapplicable, as the underlying offense of being a felon in possession does not contemplate death. Counsel, even if that was procedural error, wouldn't it be harmless under these circumstances where the court varied upward under the 3553A factors as well? I don't believe it's harmless, Your Honor, and I think distilled to his essence, there's one statement the court made in addition to many, but the primary statement that the court made, he said, there was a gun that was used here, and a substantial increase is warranted because a firearm was discharged. He used that and intermingled that with the 3553 factor, so it's fairly difficult to determine or discern exactly what weight he gave to what factor. The judge didn't say, I'm going to depart upward based upon the gun and upward one point for the death. He didn't do that, and so it's difficult to tell it is clear by the judge's own acknowledgment that he gave that a substantial increase was warranted because a firearm was discharged. What about the fact that all of this happened, to get to Judge Graza's point to add to it, all of this happened in the space, as I mentioned, two other people and in the space of a car or minivan, I can't remember which, but some sort of vehicle, so it was a confined space. That goes to the nature and circumstances of the offense, and certainly using a gun with a confined space, they could ricochet, etc., the bullet could, so I wonder if that justifies the, maybe the district court could have said more, but that justifies their reliance on the gun, let's put it that way. I do not believe that it takes it outside of the heartland of second degree murder cases involving a gun. Oftentimes, guns are fired and there are other people in the general vicinity, and obviously the bullet can ricochet and hurt people whether they're inside or outside of a vehicle. I think when we look at all of the factors, the impermissible factors that the court looked at, I believe that it's fairly clear that there was error and it was not harmless, especially when the court says he's basing his decision to depart significantly on the Erlinson, as opposed to the departure. Why does it have to be outside the heartland at all? Why can't the judge just say, in my view, this sort of murder with a gun warrants more than what the sentencing commission recommends, and therefore it's a variance. Well, I think he can do that, your honor, but I think it starts with the premise, as I understand 8th Circuit and application of the sentencing guidelines, and then the decisions flow from there. When we consider also the mistakes of fact that the judge made under the 3553 factors, first that Mr. Janisse's wife was in the vehicle and not his cousin, and also that there was no motive. I think the motive issue really vexed the court, and frankly, it vexed everyone because there is only one plausible reason that Mr. Janisse died, or that Mr. Shoulders fired the weapon. There's actually two plausible reasons, and one is completely not appropriate. One, that he just indiscriminately went out for no reason in a drug transaction that he had nothing to do with and shot a man. Or two, as he suggested to the law enforcement, that he was scared upon seeing the loaded weapon, what turned out to be a loaded weapon in plain sight in reach of Mr. Janisse, who was involved in this drug transaction. So I'm going to reserve, if it's okay with the court, the remaining time for my rebuttal. You may. Thank you for your argument. Ms. Rich, we'll hear from you next. May it please the court, counsel, my name is Katherine Rich, and I represent the United States. On May 27, 2017, Jamie Shoulders and Clarence Yellowhawk shot and killed Chris Janisse. As Mr. Erlinson said, Shoulders walked up to the van, which was occupied by three people, and fired at least two shots, hitting Chris Janisse multiple times. Then Yellowhawk approaches, fires additional shots, and they flee the scene. Shoulders did not know Christopher Janisse, and nothing happened to provoke the shooting in any way. And so, for what the district court called a senseless and incomprehensible killing, Shoulders received a sentence of 25 years. This was a two-level departure from the sentencing guidelines and also a variance. The court noted it had presided over the trial of Clarence Yellowhawk and was very familiar with the fact. There were no procedural errors at this sentence. The alleged error of the mistake of fact for the wife versus the cousin was nothing more than a misstatement. The court in the PSR identified that it was the cousin. Also, the cousin testified at the trial of Yellowhawk. It was simply a misstatement and not amounting to a procedural error. The significance to the court was that there was a family member sitting next to the victim in very close proximity, and she had to flee the vehicle to avoid being shot. Counsel, are you saying that it's not procedural error for the victim to flee the vehicle to avoid being shot? No, it's not procedural error. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. You froze on the screen right after Judge Graz asked his question, and so we didn't hear anything from the end of the question until just when I interrupted you there. So perhaps you could go back and respond again, please? Thank you. Our position is the sentencing court was not actually mistaken on the facts of the case. The judge presided over the trial where the cousin testified. She testified about having fled the vehicle. The context of the statement was after the wife had made her victim impact at the sentencing. This sentencing judge did actually know who was in the vehicle. It was in the pre-sentence report. He had seen both the wife and cousin testify. He simply misspoke. The significance to the court was that there was a family member who was seated immediately next to the victim and had to flee the vehicle. Throughout the sentencing hearing, the judge noted in discussing the departures and the actions of the defendant in causing danger to the other vehicle occupants in addition to the victim's death was significant. It was not who was sitting in the vehicle so much as the fact that there were other people also in the vehicle. The departure under 5K2.1, as we acknowledge in our brief, is unique. However, it was appropriate in this case. The sentencing judge gave consideration to the different levels of homicide. Specifically, the court noted and compared the actions of Yellowhawk who had a first degree murder conviction with Shoulders on second degree and noted in the transcript that he could take into account the variations in their conduct. The lack of motive in the sentencing court's eyes, I guess the lack of understanding the motive brought this closer to a first degree murder case in the district court's reasoning than perhaps a voluntary manslaughter. He acknowledged the degree of planning and preparation of the defendant in approaching the vehicle with a loaded firearm. That's edging close to premeditation. We also knew that there was no provocation for the shooting and there was no encounter, no words or anything were exchanged. There was no warning to the people inside the vehicle. So in looking at the extent of the increase, the court took into consideration how dangerous the defendant's conduct was to put not only the victim but also the other occupants in this kind of danger. There was trajectory evidence that was before the court to show how the bullets were going through this vehicle. And the court noted several times that it was a heinous use of a firearm to put other people, including the victim, in this extreme risk. Further, if shoulders hadn't fired, there's no indication that Yellowhawk would have done so and perhaps Christianese would have lived if not for those actions. So while it is unusual, the guidelines policy statement for death does allow for the fact that death is already accounted for to be a factor, but not the sole deciding reason as to whether or not this departure should be applied. How do you respond, though, to opposing counsel's argument that he found one case that involves a death and second-degree murder and said you basically can't count the death twice? And it does seem a little anomalous to count the death twice, I think, in those circumstances. So in the Rosten case, Ninth Circuit, what the Ninth Circuit actually said was not that you couldn't have the departure under 5K2.1, but that it wasn't supported there. There, the district court had the record was essentially that there was no question that death was intended and basically solely relied on the last sentence saying that there must be a substantial increase may be appropriate if death was intended. And in Rosten, the departure was 10 levels for a sentence of life in prison. Now, the Ninth Circuit took exception to the fact that that was essentially the entire record. Here, we have a far more robust record by the district court on all of the factors in the policy statement, which resulted in a two-level departure, a total of 25 years, so far below any sort of statutory maximum, unlike Rosten. So Rosten is factually distinguishable, procedurally distinguishable, and even in and of itself does not prohibit application of this guideline. Turning toward the departure under 5K2.6, the use of a dangerous weapon, there are no, in the sentencing guidelines, there are no enhancements under the guidelines for use of a weapon. It looks very different than the assault guidelines, which account, you know, additions for planning, additions for what type of weapon is used. There is not that in the second degree murder guidelines. And so the court examined all of the factors to determine if it was appropriate and also what should the extent be. And here, the district court noted that the use of the firearm was warranted and in looking at the extent, noted that the defendant certainly knew how to handle the gun and pointed it at the defendant and fired it multiple times. And also the manner in which it was used and extent to which it endangered others, commented again on the danger that Cheryl Denise and Scott Benson were put in by being located as the defendant was firing inside this vehicle, a very confined space. In United States v. Chase, this guideline was applied in a voluntary manslaughter conviction and again, can be applied in second degree murder because it's not already taken into account. There are many second degree murders that wouldn't necessarily involve the use of a weapon or other dangerous instrumentality. Someone could be beaten with their fists, they could be strangled, they could be pushed off a building, they could be deprived of life-saving medicine and all perhaps meet a second degree murder element without qualifying for a departure for the use of a sufficient record made by the district court as to why this was appropriately in this factual scenario. Now, we submit that there was no procedural error. Even if there was error, it would be harmless given the court's record justifying the upward variance. And the court did say that this sentence was not only a departure but also a variance. And specifically noted the variance was supported by the extreme nature of the offense and the need to protect the community from future crimes by the defendant. That last part was in the statement of reason. So the nature of the offense, there was a lengthy record on that and then also the court examined the characteristics of the defendant noting specifically that he had a prior federal felony for assaulting an officer, was on supervised release at the time of this murder, and had only recently been released from custody on his last revocation. There was also noting a numerous tribal arrests as in the presentence report and looking at the characteristics of the defendant. The court went through whether or not this was a disparity and all of the other 35-53-8 factors. So while the defense notes that the motive was clear because the defendant freaked out when he approached the vehicle, while the court was, the sentencing court was wanting to understand the court wanted to know that in an effort to understand how this happened and what he should do as a sentence, the court was not overly preoccupied with not having this information given all of the information the court had and discussed on the nature of the offense, which he noted was the simple truth is very callous. After this multiple discharge of rounds into Christianese, you guys just drove away and left the cousin in the ditch to deal with the outcome. So the court talked about the manner it was committed, the danger that not only to the victim but also to other people and also leaving the scene. And there was again no evidence that what was going on in the van. He didn't know the victim. And his argument that he told the officers four days later that he shot the victim in the legs on purpose, that was part of his statement that evolved over the course. What he initially said was he didn't shoot anyone. And then eventually, yes, he did fire. And then it was eventually that he did hit him. So the statements in his initial, what he initially told law enforcement were evolving and not entirely reliable as a whole. So in sum, the United States admits that there were no procedural errors committed by the district court. He understood the facts of this case having presided over the trial, the case of the co-defendant, hearing from all the parties at sentencing. There was a sufficient record made as to why the departures were and could be applied in this case. And then finally, the court also had a significant record on the 3553A factors and noted in the statement of reasons that it would have reached the same sentence under both the guidelines and the 3553A factors. So we submitted it as supported by the records and if there was any error, it was harmless. So we request that this court affirm the sentence. Very well. Thank you for your argument, Ms. Rich. Mr. Erlandson, we'll hear from you in rebuttal. Thank you. First of all, I would like to address the lack of authority that the government has shown to the court in submission that the two enhancements should apply. In essence, first, the government claims that the lack of authority or the application of the death enhancement to a second degree murder case is unique and unusual. Well, it's non-existent is what it is. And the government is requesting the court expand and increase its prior holdings to account for that. I have not found a single case that supports the government position and there's no evidence in this case that it should be applied. The Roston case does actually prohibit application in this instance. The government indicated that there were other did not explicitly state that it was prohibited from using the death enhancement in a second degree murder case. The court in Roston simply said that the circumstances of an intentional killing must have been taken into consideration by the sentencing commission in formulating the guideline range for second degree murder. Accordingly, the fact that Roston intended to kill his wife standing alone could not be used to depart upward from the base offense level. In that case, there were other proper grounds to depart upward. The court specifically said, though, we can't use that death enhancement in this case in these types of cases. Touching briefly on the motive argument that was made, the court did pay great attention to the motive or apparent lack of motive in this case. I don't think the court was comfortable with the evidence that was on the record in that case, even though he presided over the Yellowhawk trial, but he talks about the extreme nature of the offense and I think the extreme nature of the offense was more towards that he couldn't figure out what the motive was rather than any sort of heinous killing or heinous circumstances of the crime. In this case, not that there should ever be a standard second degree murder case or a standard murder, but this poor gentleman was shot. There was nothing extraordinary about that other than that he was shot for no apparent reason other than my client seeing a loaded weapon in a tactical holster within hand's reach of this drug transaction. I think the government admitted, obviously, Mr. Shoulders had no reason to be there, had no reason to do any of this. The only plausible reason is that he was frightened and freaked out. I think the court misweighed many of the factors, gave too much weight to some of the factors and not enough to some of the others. The court considered those errors and I believe the court did consider the fact that, or at least its understanding, that Mr. Genesee's wife was in the vehicle. Even though he might have presided over the trial sometime before, it apparently wasn't clear in his mind at the time he sentenced because he said basically that Mr. Shoulders made her a lifetime witness the death of her husband and be in the seat across from him when he died tragically. So I believe based upon all those factors, your honors, that the case should be remanded for resentencing and respectfully request the court do so. Very well, thank you for your argument. Mr. Ellenson, Ms. Rich, thank you as well. Case is submitted and the court will file an opinion in due course.